Markist A. Bulger appeals from the circuit court's summary denial of his Rule 32, Ala. R.Crim. P., petition for postconviction relief. The petition challenged his March 15, 2006, guilty-plea conviction for felony murder and his sentence to 30 years' imprisonment. Bulger filed a notice of appeal on May 1, 2006. On August 11, 2006, Bulger's appellate counsel filed a motion to dismiss the pending appeal. This Court granted Bulger's motion to dismiss and a certificate of judgment was issued on August 14, 2006.
The instant Rule 32 petition was filed on January 12, 2007. In the petition, Bulger claimed:
 (1) that his guilty plea was unlawfully induced and involuntarily entered because, he said, counsel represented to him that he would receive a 20-year sentence, split to serve 5 years' imprisonment, but received a straight sentence of 30 years' imprisonment;
 (2) that he was denied the effective assistance of counsel because, he said, counsel:
 (a) failed to advise him of the rights he was relinquishing by pleading guilty;
 (b) advised him to plead guilty in exchange for a sentence he ultimately did not receive;
 (c) failed to file a motion to withdraw his plea on the ground that he did not receive the 20-year split sentence he thought he would receive; and
 (d) failed to inform him that he had a right to an appeal; *Page 787 
 (3) that the circuit court was without jurisdiction to render the judgment or to impose the sentence because the court failed to determine a factual basis for his guilty plea and never ascertained whether he had a sufficient understanding of the consequences of his plea; and
 (4) that his failure to appeal within the prescribed time was through no fault of his own.
The State filed a motion to dismiss, asserting that Bulger's petition was without merit, insufficiently pleaded, and procedurally barred by Rule 32.2, Ala. R.Crim. P. The circuit court issued an order denying the petition and ruling that Bulger's claims were meritless, and that his ineffective-assistance-of-counsel allegations were precluded because they could have been, but were not, raised and addressed on appeal.
On appeal, Bulger reiterates claims (1), (2), and (3), as set out above, and contends that the circuit court abused its discretion by denying his Rule 32 petition without conducting an evidentiary hearing or otherwise addressing the merits of his claims. We note that Bulger did not pursue claim (4), as set out above (that his failure to appeal within the prescribed time was through no fault of his own), in his brief on appeal. Therefore, this claim is deemed abandoned and will not be considered. See, e.g., Brownlee v. State, 666 So.2d 91, 93
(Ala.Crim.App. 1995) ("We will not review issues not listed and argued in brief.").
Bulger contends that his guilty plea was not voluntarily entered because, he says, his trial counsel misinformed him as to the sentence he would receive. Specifically, Bulger maintains that his trial counsel represented to him that he would receive a 20-year sentence, split to serve 5 years' imprisonment, if he pleaded guilty. Bulger further alleged that his trial counsel failed to inform him that his sentence would be subject to the firearm enhancement of § 13A-5-6(a)(5), Ala. Code 1975. Bulger maintains that had he been aware that he would not receive a 20-year split sentence, he would not have elected to enter a plea of guilty.
In support of his claims, Bulger attached to his petition an affidavit of his foster father. In the affidavit, Bulger's foster father stated that Bulger's trial counsel,
 "informed me that in order for Markist . . . to get a favorable sentence from the Judge, then he would have to plead guilty, and that once he . . . did that the Judge was going to give him a twenty (20) year sentence with the sentence split and that Markist would have to do five straight years and be on probation for a period of five (5) years after he finished the five (5) years in prison, and that was the best offer he could get for Markist and that Markist should take the plea and get on with his life because otherwise the Judge was going to give him a much harsher sentence if Markist insisted on going to trial and get found guilty."
(R. 22.)
"[A] misrepresentation by a defendant's counsel, if material, may render a guilty plea involuntary." Ex parteBlackmon, 734 So.2d 995, 997 (Ala. 1999). To refute Bulger's claims, the State attached to its motion to dismiss a copy of the guilty-plea colloquy and the Ireland[1] form
signed by Bulger. Bulger's Ireland form reflected that he had been informed of his rights, that he was familiar with his rights, and that he understood that he was waiving those rights by pleading guilty. The face of the form revealed that Bulger was being charged with felony murder, a *Page 788 
Class A felony with the range of punishment of imprisonment for not less than 10 years and not more than 99 years, and that the offense was subject to the firearm enhancement under § 13A-5-6, Ala. Code 1975. At the guilty-plea hearing, the following transpired:
 "THE COURT: We are here on 05-878. Mr. Bulger, I'm told you are going to plead guilty to felony murder?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: That's a Class A felony. You are looking at 10 years. I guess with the weapons enhancement you are looking at 20 to life in prison with a fine not to exceed twenty thousand dollars. Do you understand that?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Is this your signature on the plea form?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Have you read through the form?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Did you read the part about the rights you are giving up by pleading guilty?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Has [your attorney] gone through the form with you?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Did he explain to you the rights you are giving up by pleading guilty?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: And you understand those rights?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Is there anything you want to ask me about what is in the plea form or about the rights you are giving up by pleading guilty?
 "THE DEFENDANT: What?
 "THE COURT: Is there anything you want to ask me about what is in this form or about the right you are giving up by pleading guilty?
 "THE DEFENDANT: No, sir.
 "THE COURT: Has anybody threatened you in order to get you to plead guilty?
 "THE DEFENDANT: No, sir.
 "THE COURT: Has anybody promised you anything in order to get you to plead guilty?
 "THE DEFENDANT: No, sir.
 "THE COURT: Has anybody told you I would go hard on you if you don't plead guilty?
 "THE DEFENDANT: Sir?
 "THE COURT: Did anyone tell you I would go hard on you if you don't plead guilty?
 "THE DEFENDANT: Would you go hard on me?
 "THE COURT: Did anybody tell you I would punish you more if you didn't plead guilty?
 "THE DEFENDANT: No, sir.
 "THE COURT: Did anyone tell you that I would go easy on you if you do plead guilty?
 "THE DEFENDANT: No, sir.
 "THE COURT: Are you under the influence of drugs or alcohol here today?
 "THE DEFENDANT: No, sir.
 "THE COURT: Preserve any issues for appeal?
 "[DEFENSE COUNSEL]: Eyewitness identification and witness statements."
(R. 46-48.)
After the State set forth its factual basis to support the felony-murder charge, the trial court accepted Bulger's guilty plea:
 "THE COURT: You do plead guilty to felony murder? *Page 789 
 "THE DEFENDANT: Yes, sir.
 "THE COURT: Are you pleased with the job [your attorney] has done for you?
 "THE DEFENDANT: Yes, sir.
 "THE COURT: The Court accepts your plea of guilty. Finds the plea was made voluntarily, intelligently with knowledge of the consequences. The Court adjudicates you guilty of felony murder."
(R. 51.)
The trial court set the sentencing hearing for April 10, 2006. At the sentencing hearing, the following occurred:
 "[DEFENSE COUNSEL]: Judge, before you impose sentence, I would like for you to consider Mr. Bulger's age. He just turned 18 years old. He was 17 at the time this crime was committed. That doesn't excuse the crime, I understand that, Judge. He is a young man and he was operating with a young man's mind and not a mature mind. He completed tenth grade and he has been locked up since the commission of this crime and hasn't had the opportunity to go any further with his education. Judge, Mr. Bulger comes from a dysfunctional family. He has been living with a foster parent because the juvenile court didn't feel like his biological family were appropriate people to take care of this young man as he was growing up. They removed him from his biological family and put him with a foster family. He has had some tough breaks in life. Mr. Bulger is here today because of choices he made, and they were wrong choices, but they were the choices of an immature child's mind. I would just like you to take that into consideration in sentencing him."
 "THE COURT: Anything from the State?
 "[DISTRICT ATTORNEY]: Yes, your honor. First of all, there was a weapon involved so we would move to invoke the weapons enhancement. I do not want Mr. Bulger to see that this is the two children of the victim, the father that was taken away, that will never ever get to see their father again. As I said in the previous hearing, this is a man who came over to this country to try to get a better opportunity for his family and was working every day and sending money home every week. So those two children right there — and now they don't have a daddy coming home, and I just want him to realize that. I will further add that all of this was because of the victim, where he was from, that he was targeted because they thought he was a Mexican, would be an easy target. I think this just further illustrates the horrible nature of this crime. But other than that, that is all I have to say.
 "THE COURT: The victims identified Mr. Bulger as having the weapon?
 "[DISTRICT ATTORNEY]: Yes, Your Honor.
 "THE COURT: He did not cooperate at all, did he?
 "[DISTRICT ATTORNEY]: No, sir. He did not give a statement. They did identify him as being the one who had the weapon that hit one of the victims in the head. The codefendants — two of the codefendants identified him as being the shooter. I will honestly say that one of those codefendants, [Mr.] Jones, has since changed that statement, but he did give a taped statement to the Montgomery Police Department saying Mr. Bulger had a firearm and is the one who shot the firearm, as did Mr. Osborne.
 "THE COURT: I will sentence Mr. Bulger to thirty years in the Department of Corrections."
(R. 53-56.)
Rule 32.6(b), Ala. R.Crim. P., requires that a petition plead a "clear and specific *Page 790 
statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds." Once a petitioner has satisfied his burden of pleading, he is then entitled to present evidence to satisfy his burden of proof pursuant to Rule 32.3, Ala. R.Crim. P. In Ford v.State, 831 So.2d 641 (Ala.Crim.App. 2001), this Court held that an evidentiary hearing was warranted when a petitioner challenged the voluntariness of his guilty plea on the grounds that his trial counsel allegedly misrepresented that he would receive a split sentence if he pleaded guilty. Here, as inFord, the petitioner has satisfied his burden of pleading. Absent the opportunity to present evidence to prove Bulger's claim, the Ireland form and guilty-plea colloquy transcript are not sufficient to refute his claim.
Therefore, we must remand this case to the circuit court to allow Bulger an opportunity to present evidence to support his claim that his guilty plea was involuntary because of his counsel's alleged misrepresentation that he would receive a 20-year split sentence if he pleaded guilty. On remand, the court shall either conduct an evidentiary hearing or accept evidence in the form of affidavits, written interrogatories, or depositions. See Rule 32.9(a), Ala. R.Crim. P. After receiving and considering the evidence presented, the circuit court shall issue specific written findings of fact regarding Bulger's claims and may grant whatever relief it deems necessary. Due return shall be filed within 56 days of the release of this opinion and shall include the circuit court's written findings of fact, a transcript of the evidentiary hearing, if one is conducted, and any other evidence received or relied on by the court in making its findings.
REMANDED WITH DIRECTIONS.*
BASCHAB, P.J., and McMILLAN and SHAW, JJ., concur.
WISE, J., dissents, without opinion.
[1] See Ireland v. State, 47 Ala.App. 65,250 So.2d 602 (1971).
* Note from the reporter of decisions: On March 28, 2008, on return to remand, the Court of Criminal Appeals affirmed, without opinion. On April 25, 2008, that court denied rehearing, without opinion.